UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARC SHELL,<br>    *Plaintiff*,<br><br>    *vs.*<br><br>KEVIN SMITH, IN HIS OFFICIAL CAPACITY AS<br>MAYOR OF THE CITY OF ANDERSON, AND<br>CITY OF ANDERSON,<br>    *Defendants*. | )<br>)<br>)<br>)    1:13-cv-00583-JMS-MJD<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

Plaintiff Marc Shell brings two claims against the Defendants City of Anderson (the "City") and the City's Mayor, Kevin Smith. First, Mr. Shell argues that the City, via his former employer, the City of Anderson Transit System, ("CATS"), terminated his employment in violation of the Americans with Disabilities Act ("ADA"). [Filing No. 1 at 4.] Second, he brings a First Amendment retaliation claim against both Defendants pursuant to 42 U.S.C. § 1983, alleging that his employment was terminated for political reasons. [Filing No. 1 at 4.] Presently pending before the Court is the Defendants' Motion for Summary Judgment, seeking summary judgment on both of Mr. Shell's claims. [Filing No. 26.] For the reasons that follow, the Court **GRANTS** the motion.

## I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must

1

support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility

determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Y Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
## BACKGROUND

The following background is drawn from the admissible evidence submitted by the parties, viewed in the light most favorable to the non-movant, Mr. Shell.

Mr. Shell started working as a Mechanic's Helper for CATS in February 2000. [Filing No. 27-1 at 1.] The City maintained official job descriptions for its positions, including that of Mechanic's Helper, long before Mr. Shell was hired. [*See* Filing No. 27-3.] The Mechanic's Helper job description sets forth the following responsibilities:

- servicing vehicles with gasoline, oil, water and battery water, changing oil and lubricating chassis;
- cleaning exterior/interior of buses and other vehicles, applying decals, and performing similar related work;
- making visual inspections during servicing for abnormal steering, lights, tires, chassis, body, windshield wipers, generator charging rate, and radiator cooling water level;
- replacing batteries, battery cables, and light bulbs;
- draining, flushing, and refilling radiators, adding proper amount of anti-freeze solution, and replacing radiator hose and clamps;
- reporting low quantities of automotive supplies, and picking up parts;
- operating City vehicles in service, maintenance and repair work;
- maintaining equipment, tools and work areas in a clean and orderly condition;
- cleaning garage and office areas, including sweeping, mopping, washing windows and walls, and emptying trash; mowing grass and trimming around building; painting as needed;
- may occasionally drive and deliver buses to various field locations;

3

- performing related duties as required.

[Filing No. 27-3 at 2.] To perform these responsibilities, the job description required a Mechanic's Helper have the following skills and knowledge:

- basic knowledge of and ability to read and use repair manuals, parts catalogs and work orders;
- working knowledge of basic automotive maintenance and ability to use automotive tools;
- working knowledge of safety precautions applicable to automotive maintenance work;
- ability to read and write legibly;
- possession of a valid [commercial driver's license] with proper endorsements and demonstrated safe driving record.

[Filing No. 27-3 at 3.]

Former CATS General Manager Merle Jones hired Mr. Shell in 2000 with the knowledge that Mr. Shell did not hold, and could not obtain, a commercial driver's license ("CDL"). [Filing No. 34-3 at 10.] Mr. Jones did not believe that Mr. Shell required a CDL because Mr. Jones thought of Mr. Shell more as a janitor than a Mechanic's Helper. [Filing No. 34-3 at 10.] Further, Mr. Jones acknowledged that, while Mr. Shell could perform many of the job responsibilities of a Mechanic's Helper listed above, he could not perform all of them, such as driving the vehicles out on the street. [Filing No. 34-3 at 10.] Regardless of the specific tasks Mr. Shell was required to perform during his employment, it is undisputed that CATS does not officially employ janitors, and Mr. Shell's official position was that of Mechanic's Helper.[1] [*See* Filing No. 27-6 at 2; Filing No. 34-1 at 2.]

Mr. Shell worked at CATS in his position until January 2012, when CATS General Manager Stephon Blackwell, appointed by Republican Mayor Smith, terminated Mr. Shell's employment because Mr. Shell did not possess a CDL. [Filing No. 34-2 at 22; Filing No. 34-4 at

---

[1] The collective bargaining agreement between the municipal workers union and the City also reflects that no janitor positions exist within CATS. [Filing No. 27-7 at 3.]

13-14.] As stated above, possession of a CDL is explicitly listed on the City's official job description as a requirement for the Mechanic's Helper position. [Filing No. 27-3 at 3.] However, Mr. Shell has hearing and vision impairments and cognitive disabilities, [Filing No. 35 at 1], and these disabilities preclude Mr. Shell from obtaining a CDL, [Filing No. 34-1 at 3; Filing No. 34-2 at 8]. In his deposition, Mr. Blackwell explained that he terminated Mr. Shell because he "[w]anted him to fit the job description for the position that he was in." [Filing No. 34-4 at 14.] After Mr. Blackwell fired Mr. Shell in 2012, Mr. Shell was replaced by a worker who holds a CDL. [Filing No. 34-2 at 8.]

Mr. Shell was a politically active Democrat throughout his employment at CATS, which began in 2000. [Filing No. 34-1 at 2-3.] In 2003, Mayor Smith was first elected mayor of Anderson. [Filing No. 34-1 at 2.] Mayor Smith was defeated in the 2007 mayoral election by Democrat Kris Ockomon. [Filing No. 34-1 at 3.] Mr. Shell attended Mayor Ockomon's victory party, and the day after the 2007 mayoral election, Mr. Shell was pictured on the front page of the City of Anderson newspaper celebrating Mayor Ockomon's victory over Mayor Smith at the party. [Filing No. 34-1 at 3; Filing No. 35-1 at 1.] Mayor Smith, however, defeated Mayor Ockomon in the 2011 election and became mayor in January 2012. [Filing No. 34-1 at 3.] Shortly thereafter, Mr. Blackwell became General Manager of CATS and terminated Mr. Shell's employment. [Filing No. 34-2 at 22; Filing No. 34-4 at 13-14.]

## III.
## DISCUSSION

Mr. Shell brings two claims related to the City's termination of his employment as a Mechanic's Helper. The first is an ADA claim against the City, and the second is a § 1983 First Amendment retaliation claim against the City and Mayor Smith in his official capacity. The Court will address each claim in turn.

### A. ADA Claim

Defendants contend that summary judgment is warranted on Mr. Shell's ADA reasonable accommodation claim because he is not a qualified individual under the ADA. [Filing No. 27 at 13-14.] Specifically, they argue that one of the essential functions of the Mechanic's Helper position was performing tasks that require a CDL, and Mr. Shell admits that he does not have, and cannot obtain, a CDL. [Filing No. 27 at 14.] Moreover, Defendants argue that simply because the City permitted Mr. Shell to hold the Mechanic's Helper position without a CDL, does not mean that the ADA requires the City to continue to do so.[2] [Filing No. 27 at 14.]

Mr. Shell maintains that he was terminated solely because he failed to possess a CDL. [Filing No. 35 at 15-17.] Because of this, Mr. Shell argues that the determinative issue is whether having a CDL is an essential function of the Mechanic's Helper position. [Filing No. 35 at 15.] The evidence shows that having a CDL was not essential to the position, Mr. Shell contends, because he was a Mechanic's Helper for twelve years without having one, and during this time he was able to adequately perform the other tasks assigned to him. [Filing No. 35 at 15-17.]

Defendants agree with Mr. Shell that he was terminated solely because he did not have a CDL, and further, that the sole issue is whether having a CDL is an essential function of the Mechanic's Helper position. [Filing No. 43 at 3.] Defendants point out that Mr. Shell did not dispute that under both Democrat and Republican mayors, the City used a consultant to create its

---

[2] Defendants move for summary judgment on claims of both wrongful termination and failure to accommodate under the ADA. [Filing No. 27 at 8-15.] However, Mr. Shell only responded regarding the failure to accommodate claim. [Filing No. 35 at 11-21.] He has therefore abandoned any ADA wrongful termination claim by not providing any arguments concerning it. *See Pugh v. City of Attica, Ind.*, 259 F.3d 619, 624 (7th Cir. 2001) (stating that the plaintiff "abandoned [his] . . . claims by failing to address them in his response brief to the [defendant's] motion for summary judgment").

job descriptions, including for the Mechanic's Helper position, and that during Mr. Shell's employment, the Mechanic's Helper's job description always stated that having a CDL is an essential function of the position. [Filing No. 43 at 5-7.] Finally, Defendants reiterate that the fact that the City previously allowed Mr. Shell to be a Mechanic's Helper without a CDL, does not mean that the ADA mandates they continue to do so. [Filing No. 43 at 7-8.]

The ADA requires employers to make reasonable accommodations to known disabilities. *See* 42 U.S.C. § 12112(b)(5)(a). To prevail on his ADA reasonable accommodation claim, Mr. Shell must show "(1) []he is a qualified individual with a disability; (2) the employer was aware of h[is] disability; and (3) the employer failed to reasonably accommodate the disability." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008) (citation and quotation marks omitted). "[T]he ADA defines the term 'qualified individual' to mean 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013) (emphasis omitted) (quoting 42 U.S.C. § 12111(8)). However, the ADA does not require "an employer . . . to change the essential functions of a job to accommodate an employee." *Ammons v. Aramark Unif. Services, Inc.*, 368 F.3d 809, 819 (7th Cir. 2004) (citation and quotation marks omitted).[3]

---

[3] Mr. Shell maintains that the City failed to engage in the interactive process mandated by the ADA. [Filing No. 35 at 16.] It is true that, "[a]fter an employee has disclosed that she has a disability, the ADA requires an employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) (citation and quotation marks omitted). But as Mr. Shell recognizes, [Filing No. 35 at 16], a failure to engage in the interactive process is not an independent basis for liability, *see Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). Therefore, Mr. Shell's ADA claim must have independent merit, regardless of whether the City adequately engaged in the interactive process.

The Court agrees with the parties that the determinative issue is whether possessing a CDL is an essential function of the Mechanic's Helper position. If having a CDL was an essential function of the position, the City was not required to change this essential function to accommodate Mr. Shell, *see* [Ammons, 368 F.3d at 819](#) (citation and quotation marks omitted), and Mr. Shell is not a qualified individual under the ADA, [Brumfield, 735 F.3d at 631](#).

To determine what constitutes an essential function of a job, courts "generally defer to an employer's determination of the essential functions of a job . . . . But this does not mean that [the Court] complete[ly] abdicate[s] independent review." [Feldman v. Olin Corp., 692 F.3d 748, 755 (7th Cir. 2012)](#); *see* [Lloyd v. Swifty Transp., Inc., 552 F.3d 594, 601 (7th Cir. 2009)](#) ("The employer, not a court, determines what functions are essential, and we will not second-guess that decision."). The Court "may consider, but is not limited to, evidence of the employer's judgment as to which functions are essential, and the written job description in effect before the employee interviewed for the position." [Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 550 (7th Cir. 2011)](#). Additionally, the Court will consider factors such as "the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." [Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits, 601 F.3d 674, 679 (7th Cir. 2010)](#); *see* [29 C.F.R. § 1630.2(n)(3)](#). In the end, however, the Court "presume[s] that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." [Gratzl, 601 F.3d at 679](#).

The evidence demonstrates that the possession of a CDL is an essential function of the Mechanic Helper's position. Most importantly, the City's official job description for the Mechanic's Helper position, written in 1992 and revised in 1998 and 2000, [[Filing No. 27-3 at](#)

1], requires possession of a CDL, [Filing No. 27-3 at 3]. And current CATS Director of Operations Mr. Rick Garrett testified that possession of a CDL is essential to the functions of the Mechanic's Helper position. [Filing No. 27-5 at 2.] Specifically, Mr. Garrett attested that Mechanic's Helpers need CDLs to be able to perform maintenance functions on CATS vehicles, and that the current incumbent hired to replace Mr. Shell holds a CDL. [Filing No. 27-5 at 2.]

Mr. Shell's evidence does not place Defendants' evidence in dispute. His only evidence is that he worked as a Mechanic's Helper for twelve years without a CDL and that, throughout this time, his previous supervisors "allowed him to perform the job without driving vehicles that required a CDL." [Filing No. 35 at 17.] In short, Mr. Shell claims his supervisors' past forgiveness of the CDL requirement establishes that the requirement and related tasks are non-essential.

Unfortunately for Mr. Shell, the Seventh Circuit has rejected such a claim in the past, holding that an employer's prior restructuring of a job—by allowing the employee to not perform certain functions—is not evidence that those functions are non-essential. *See Winfrey v. City of Chicago*, 259 F.3d 610, 613-16 (7th Cir. 2001) (rejecting the plaintiff's argument that he was performing all of the essential functions of his position by virtue of his employer's limited assignment, reasoning: "[The plaintiff] argues that the accommodation the [employer] did provide—the adjusted, limited ward clerk position—demonstrates that those four duties to which he was assigned must be the only essential duties of the full ward clerk position that he seeks. But it has been clear from the onset of this case that the [employer] created a modified ward clerk position for [the employee], consisting of duties that [his supervisor] believed he could perform."); *Basith v. Cook County*, 241 F.3d 919, 930 (7th Cir. 2001) (rejecting the plaintiff's argument that the job tasks required in the position his supervisor created for him was evidence

9

of the essential functions of the job, reasoning that "this evidence merely shows the job could be restructured, not that [the task he was not required to do] was non-essential . . . [and t]he fact that restructuring is feasible, in itself, is not persuasive evidence one way or the other that a function is essential to a job"). In short, the Seventh Circuit has made clear that the fact that an employer previously allowed an employee to work without performing certain job functions, is not evidence that those functions are non-essential.[4]

Moreover, "[j]ust as an employer is not required to create a new position or strip a current job of its essential functions, an employer is not required to maintain an existing position or structure that, for legitimate reasons, it no longer believes is appropriate." *Gratzl*, 601 F.3d at 680; *see also Amadio v. Ford*, 238 F.3d 919, 929 (7th Cir. 2001) ("[T]he fact that [the employer] generously granted extended leaves to its employees—in *rare* cases, up to two years—does not necessarily bind [the employer] to *repeatedly* grant successive leaves to [the employee as a reasonable accommodation] . . . .") (emphasis in original). Thus the City was under no obligation to continue providing Mr. Shell with the job restructuring it did. As the Seventh Circuit has also explained, to force employers to indefinitely provide any job restructuring it at

---

[4] Mr. Shell's reliance on *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 192-193 (7th Cir. 2011), for propositions contrary to the one's articulated in *Winfrey* and *Basith* is unpersuasive. [Filing No. 35 at 17-19.] In *Miller*, the Seventh Circuit held that the evidence before it distinguished the case from the typical case, because "it was in fact the normal course for individual members of the bridge crew," on which the plaintiff worked, "to substitute and reassign tasks among themselves according to abilities, preferences, and limitations," and thus the plaintiff's "request that task assignments be adjusted among the bridge crew members . . . did not amount to a request that another member of the team perform an essential, non-delegable task." *Id.* at 199-200. But Defendants here have presented evidence demonstrating that the City requires each Mechanic's Helper to possess a CDL. [Filing No. 27-3 at 3.] And Mr. Shell has not presented any evidence that, like in *Miller*, he is a member of a Mechanic's Helper team in which members rotate through and reassign tasks according to abilities and preferences. Therefore, *Miller* does not undermine the Court's conclusions based on *Winfrey* and *Basith*. It is simply a case where different facts established whether a particular job function was essential.

10

one time provided would actually be detrimental to disabled workers. *See [Vande Zande v. State, 44 F.3d 538, 545 (7th Cir. 1995)](#)* ("[I]f the employer . . . bends over backwards to accommodate a disabled worker—goes further than the law requires— . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation. That would hurt rather than help disabled workers."). Mr. Shell's job loss after years of working at the City is unfortunate for him, to say the least, but the ADA does not require the City to keep Mr. Shell employed in a position in which he cannot perform the essential functions, even if it allowed him to only perform the janitorial functions (and not the functions that require a CDL) for an extended period.[5] *See [Gratzl, 601 F.3d at 680](#)*.

In the end, the Court "presume[s] that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *[Id. at 679](#)*. Mr. Shell has not offered such evidence. Therefore, because Mr. Shell cannot obtain a CDL, he cannot perform the essential functions of the Mechanic's Helper position and is thus not a qualified individual under the ADA. The City is entitled to summary judgment on Mr. Shell's ADA claim.

### B. § 1983 First Amendment Retaliation Claim

Mr. Shell's § 1983 First Amendment retaliation claim is brought against the City and Mayor Smith in his official capacity.[6] As Defendants recognize, a suit against Mayor Smith in

---

[5] Mr. Shell does not explicitly argue that he was a janitor at CATS, but his brief suggests that he was, for all intents and purposes, a janitor. [[Filing No. 35 at 3-5](#).] Testimony from former CATS General Manager Mr. Jones also indicates that Mr. Shell was a janitor. [[Filing No. 34-3 at 10](#).] However, the undisputed evidence shows that there has never officially been a janitor position at CATS. [[Filing No. 27-7 at 3](#); [Filing No. 27-6 at 1-2](#).]

[6] Mr. Shell also brought this claim against Mayor Smith in his individual capacity, but the parties have since stipulated to the dismissal of Mayor Smith in his individual capacity from the case. [[Filing No. 41 at 1](#).]

his official capacity is the same as suing the City itself, and the Court will therefore treat this claim as solely against the City. *See Jungles v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (stating, in a suit against a city and the mayor of the city in his official capacity, that "there is one defendant—the city—not two; for the complaint names the mayor as a defendant in his official capacity only, which is the equivalent of suing the city"). But before addressing the merits of this claim, the Court must briefly address an issue that the parties fail to discuss entirely— namely, whether a § 1983 claim against the City is proper in this case.

To hold a municipality liable under § 1983, "the violation of the plaintiff's rights must result from a municipal custom or policy." *Ball v. City of Indianapolis*, --- F.3d ----, 2014 WL 3673466, *5 (7th Cir. 2014). "One way in which a municipality may be liable for a section 1983 violation is if 'an individual with final policymaking authority for the municipality (on the subject in question) caused the constitutional deprivation.'" *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) (quoting *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009)). The evidence shows that the individual who caused the alleged constitutional deprivation here was Mr. Blackwell, as he accepted the General Manager of CATS position on the condition that he "would hire and run the department [his] way," [Filing No. 27-10 at 5], and there is no evidence that anyone but Mr. Blackwell was involved in the decision to terminate Mr. Shell's employment, [Filing No. 27-10 at 11-12]. However, neither of the parties address whether Mr. Blackwell had "final policymaking authority for the municipality (on the subject in question)." *Kristofek*, 712 F.3d at 987. Defendants instead address only the merits of Mr. Shell's First Amendment claim, without challenging whether the City can be held liable for Mr. Blackwell's decision. The Court will not construct this argument for Defendants; because they implicitly accept that the City could be held liable for Mr. Shell's termination by Mr.

12

Blackwell, the Court will assume without deciding that it could and turn directly to merits of Mr. Shell's claim.

"To make out a prima facie case of First Amendment retaliation, a public employee must present evidence that (1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions." [Peele v. Burch, 722 F.3d 956, 959 (7th Cir. 2013)](); *accord* [Hall v. Babb, 389 F.3d 758, 762 (7th Cir. 2004)](). "Then, the burden shifts to the employer to rebut the causal inference raised by the plaintiff's evidence." [Kidwell v. Eisenhauer, 679 F.3d 957, 965 (7th Cir. 2012)](). "If the employer fails to counter the plaintiff's evidence, then the employer's retaliatory actions are considered a 'necessary condition' of the plaintiff's harm, and the plaintiff has established the but-for causation needed to succeed on his claim." [Id.]()

To make out his prima facie case, Mr. Shell can rely on direct or circumstantial evidence. *See* [id.]() "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." [Id.]() (citation and quotation marks omitted). "Circumstantial evidence, however, is evidence from which a trier of fact may infer that retaliation occurred," and can include "suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." [Id.]() (citation and quotation marks omitted). Regardless of which type of evidence the plaintiff presents, it must demonstrate "that the protected activity and the adverse action are not wholly unrelated." [Id.]() (citation and quotation marks omitted).

Neither party disputes the first two factors of the prima facie case—whether Mr. Shell's politically expressive activities were constitutionally protected or whether his termination is likely to deter free speech. However, they dispute the third factor, [[Filing No. 27 at 15-18](); Filing

13

No. 35 at 22-25], namely, whether Mr. Shell produced sufficient evidence "that his speech was at least a motivating factor" in the decision to terminate his employment. *Kidwell*, 679 F.3d at 965.

Defendants do not contest that Mr. Shell was a politically active Democrat. They do contend, however, that there is no evidence linking Mr. Shell's politically expressive activities to the termination of his employment. [Filing No. 27 at 15-17.] Mr. Shell disagrees. To prove the required connection, Mr. Shell primarily relies on a picture of himself on the front page of the City of Anderson newspaper celebrating Republican Mayor Smith's defeat in the 2007 election.[7] [Filing No. 35 at 22.] He also states that Mr. Blackwell terminated two other Democrats, Jack Brown and Mark Baugher, in addition to Mr. Shell, shortly after Mr. Blackwell's appointment by Mayor Smith as CATS General Manager, [Filing No. 35 at 23], and that a jury could infer improper motive from the fact that he was fired without an attempt by the City to engage in the ADA interactive process. [Filing No. 35 at 22-24.] Defendants reply that the City's alleged failure to engage in the interactive process does not permit an inference of discrimination because Mr. Shell was not a qualified individual under the ADA, and thus the City had no obligation to engage with him in the interactive process at all. [Filing No. 43 at 9.]

---

[7] In the argument section of his brief, Mr. Shell makes many assertions of facts that are unaccompanied by citations to record evidence. [Filing No. 35 at 22-25.] Defendants' briefs, at times, suffer from the same problem. Under the Local Rules, "[a] party must support *each fact the party asserts in a brief with a citation* to a discovery response, a deposition, an affidavit, or other admissible evidence." Local Rule 56-1(e) (emphasis added); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) ("The factual statement required by Local Rule 56.1 is not a mere formality. It follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial, and it substantially facilitates the district court's task in deciding whether a trial is indeed necessary."). Where the parties, provide the necessary citations in the fact sections of their briefs, the Court in its discretion will overlook the parties' noncompliance with the Local Rules on this occasion. However, to the extent the evidence supporting certain factual statements in the parties' briefs was not properly cited in the brief at all, the Court will not consider those factual assertions. The parties are reminded to comply with Local Rule 56-1(e) in future filings with the Court.

Mr. Shell's evidence fails to establish that his political activities were a motivating factor in the termination of his employment, as there is no evidence that Mr. Blackwell was aware that Mr. Shell was a politically active Democrat, let alone that any such knowledge factored into the decision to terminate his employment. The only evidence Mr. Shell offers to demonstrate such knowledge is Mr. Shell's picture on the front of an Anderson newspaper from 2007. [Filing No. 35 at 5 (citing Filing No. 35-1)]. But there is no evidence that Mr. Blackwell saw or was otherwise aware of this photo. Moreover, even if he was aware of the photo in 2007, no evidence links his knowledge of the photo or Mr. Shell's politically expressive activity more generally to the termination of his employment more than four years later. In short, the inferences Mr. Shell asks the Court to make from a photo taken over four years prior to his termination are simply not reasonable, as they are not supported by any additional evidence that would allow a jury to infer that Mr. Shell's political expression, as demonstrated by the photo, was at all relevant to the termination of his employment.

Mr. Shell's evidence that Mr. Blackwell fired two other Democrats fails to advance his claim for the same reasons—namely, there is no evidence that Mr. Blackwell knew of Mr. Shell's political affiliations. Thus Mr. Shell cannot connect *his* termination to any political motivation on Mr. Blackwell's part. Mr. Shell also argues that Mr. Blackwell's statement regarding the termination of one of the other Democrats in CATS—that he "wanted [his] people and the people that were going to be part of [his] team"—is evidence of improper political motivation. [Filing No. 35 at 23 (quoting Filing No. 34-4 at 11).] But this statement was made regarding another individual altogether, and, in any event, when read in context, does not permit an inference of political motivation. [Filing No. 34-4 at 11.]

Finally, Mr. Shell's contention that the City's failure to engage in the ADA processes is circumstantial evidence of the Defendants' unlawful political motivation is without merit. [Filing No. 35 at 23-24.] The ADA requires an employer to engage in an interactive process once it is aware of the employee's disability so that a reasonable accommodation, should one exist, can be identified. *See* Spurling, 739 F.3d at 1061. But an employer is not required "to change the essential functions of a job to accommodate an employee." Ammons, 368 F.3d at 819. Because having a CDL was an essential function of the Mechanic's Helper position, the interactive process could not have led to the identification of a reasonable accommodation. For at least this reason, no inference of political motivation can be drawn from the City's failure to engage in a process that would have been fruitless.

In sum, Mr. Shell has failed to adduce evidence supporting the third factor of his prima facie case—that his political speech "was at least a motivating factor in the employer's actions." Peele, 722 F.3d at 959. Simply put, Mr. Shell has only speculation linking his political activities to his termination. Accordingly, the City and Mayor Smith are entitled to summary judgment on this claim.

## IV.
## CONCLUSION

For the reasons stated, the Court **GRANTS** the Defendants' Motion for Summary Judgment. [Filing No. 26.] Final judgment will enter accordingly.

08/07/2014

*signature*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**